Lyons *v.* Wait.

## LYONS

*v.*

## WAIT and PYATT et al.

1. Mrs. Pyatt and Mrs. Wait are sisters; they owned a house and lot as tenants in common, and for years had been anxious to make sale thereof; Mrs. Wait authorized a real estate broker to make sale for $8,500, fixing all the terms by memoranda in writing, to which she signed "Wait & Pyatt;" the broker, by writing, purporting to be for Mrs. Wait and Mrs. Pyatt upon the face of it, agreed to sell the lot to one Lyons, simply signing his own name thereto, Lyons signing his.—*Held,* that if Mrs. Wait had no authority whatever to bind Mrs. Pyatt in authorizing the broker to sell, she ratified both the act of her sister and the agent by letters directing the agent to prepare a deed, and by executing and acknowledging such deed and delivering it again to the broker for the purpose of completing contract of sale; also, *held,* that although the written agreement entered into by the broker may have been so imperfectly executed as not to bind either of the sisters, they both ratified it and became bound by its provisions by their letters and by the execution and tender of the deed for the premises.

2. A letter written by Mr. Pyatt, at the request of his wife and Mrs. Wait, to the broker, enclosing a check for the sum named in the contract as liquidated damages, directing him to hand it together with the part consideration money which Lyons had paid to him, and also to return the contract to Lyons, constitutes a distinct ratification of the contract and relates back to the time of its execution.

3. Such broker having been continued in their service with respect to the same transaction, they were chargeable with all the information which he possessed respecting the matter.

4. They were chargeable with the knowledge of an attorney who drew the agreement and had the possession of it at the time when they employed him, though such employment was not until after the time named for the delivery of the deed.

5. Where vendor and vendee are endeavoring to remove some supposed encumbrance or cloud upon the title, neither has a right to consider his obligations to the other determined without reasonable notice.

6. Where vendors agree to convey a house and lot at the corner of Nassau and Witherspoon streets, and it is discovered afterwards that three feet and eleven inches of the house is upon Witherspoon street, and the deed which is tendered by the vendors purports to run along Nassau street twenty-six feet and six inches to Witherspoon street, such tender is in compliance with their

agreement, and conveys all the land owned by the vendors in the corner formed by the junction of said streets.

*Mr. John F. Hageman* and *Mr. James Buchanan,* for the complainant.

*Mr. Woodbury D. Holt* and *Mr. Fergus A. Dennis,* for the defendants.

BIRD, V. C.

On the 12th day of December, 1891, Mrs. Pyatt and Mrs. Wait were supposed to be the owners in fee simple of a lot of land in Princeton, located at the corner of Nassau and Witherspoon streets. In that month Mrs. Wait gave to Ollie H. Hubbard, a real estate broker living in Princeton, a memorandum signed by her in the names of "Wait & Pyatt." Amongst other statements therein are these:

"Property of Mrs. Wait and Pyatt for sale or exchange. Situation, corner of Nassau & Witherspoon streets Princeton N. J. Size of house and lot—House 13 rooms, lot 22½ x 129. Price $8500. Amount in cash, all. Possession given April 1st, 1892."

On the 12th day of February, 1892, Hubbard entered into an agreement with James J. Lyons, the complainant, for the sale of the said premises to Lyons for $8,500, which sum was to be paid on the 1st day of April upon the delivery of the deed for the premises. Five hundred dollars of the said consideration money were paid in cash to said Hubbard upon the execution of said agreement. The interests of the vendors in, or their obligations under, the said agreement, considering the agreement independently of other facts in the case, must be ascertained by the following language thereof, namely:

"Agreement between Ollie H. Hubbard, for Mrs. Emma Pyatt of New York City, in the State of New York and Mrs. Mary F. Wait of Princeton, Mercer County, New Jersey of the first part, and James J. Lyons of Princeton aforesaid of the second part, Witnesseth, &c."—

And the signatures thereto. Hubbard simply signs his own name; Lyons signs his.

The defendants deny all obligation on their part to perform this agreement. They say that the agreement referred to was not their agreement; that the form and manner of making and signing are such as not to bind them, and that they only could be bound by the agent first signing their names in full, adding his own name, with such prefixes or suffixes as to show that he was acting as agent.

The defendants also insist that they have neither said nor done anything by which they adopted or ratified the said agreement, so that equity should require a specific performance of it.

It is likewise insisted that if they ever were bound the delay of the complainant was such as to release them.

Let it be understood that I do not proceed in the consideration of this case in disregard of the authority of *Milne* v. *Cleb, 17 Stew. Eq. 378,* in which Vice-Chancellor Van Fleet held that it was the office of a broker only to bring parties together, and not to enter into written agreements for the sale of land for them. I think this case rests upon entirely different grounds, because of the conduct of the parties subsequent to the execution of the agreement by the agent.

Supposing the agreement to have been so imperfectly executed as not to bind the defendants Wait and Pyatt, it is worthy of consideration whether they did not adopt it and so ratify it as to bind them. A statement of the principal facts as they transpired will show what force there is in this inquiry. The agreement was signed March 12th, 1892; very soon thereafter Hubbard telegraphed to Mrs. Wait the fact that a sale had been made. To the telegram she replied by letter, and, besides acknowledging the telegram, said, "You know the house is rented for one year and no one can have it unless they take it subject to the lease." In reply to a letter from him, Mrs. Wait, under date of March 19th, said:

"You can have the deed right away, but we will not be home till about the 5th, of April, * * * A few days can make no difference to Mr. Lyons as you can tell him it is all right. Have notified Mr. Vanderbilt that he must

vacate the store on or before the first of April. Our insurance on the house has five years to run and of course would like to make it over to him. I will write Charles Wait to hand you the deed."

In a letter to Hubbard, under date of March 23d, she spoke of their visiting Princeton the next Tuesday, and directed him to have the deed ready, when they would give him lease and insurance papers. Under the date of March 25th, Runyon Pyatt, the husband of Mrs. Pyatt, wrote from New York to Hubbard:

"If the transfer of the property Nassau and Witherspoon streets can be properly executed here before a Notary for the State of New Jersey, my wife desires then that you send me on the papers at once and we will give it immediate attention, they can then be sent to Mr. and Mrs. Wait at Lakewood for them to sign. * * * Is it necessary if executed as suggested for either of them to be present April the first at Princeton."

Under date of March 26th, R. Pyatt telegraphed to Hubbard, "Mrs. Pyatt will meet you at my office one o'clock." Under date of March 28th, Mrs. Wait wrote to Hubbard as follows:

"Mr. & Mrs. Pyatt did not come last week as they expected to, but I heard from them, they do not want to come to Princeton unless it is positively necessary. You have heard from him before this time, if you send the deed to him to sign there we will do the same here before a Notary."

On April 1st, when the deed was to have been delivered and the balance of the purchase-money paid, Mr. Vanderbilt, who was in possession of the premises, declined to vacate them, and thereupon Hubbard and Lyons stipulated in writing that the carrying out of the agreement should be postponed until April 4th. Under the date of April 1st, Mrs. Wait acknowledged the receipt of a telegram from Hubbard, adding—

"it does not surprise me in the least that Vanderbilt does not want to get out of the store * * * Mrs. Waite notified him as soon as we got your letter telling us the place was sold, and that he must get out on or before the 1st of April."

On the 4th of April, Hubbard and Lyons agreed in writing to a further postponement of performance of the agreement until

April 18th.   April 30th, R. Pyatt, the husband of Mrs. Pyatt, wrote to Mr. Hubbard respecting Mr. Vanderbilt's surrendering the possession of the premises, saying that his wife was fearful that nothing had been done towards vacating, saying she would not like any trouble over the same, adding, " If such is the case as far as possible we trust you will try to arrange matters satisfactory to all parties concerned." In letter dated March 31st, Mr. Pyatt acknowledged the receipt of a letter from Hubbard, and, among other things, says :

"He hopes Lyons will give Vanderbilt time to take care of his hardware stock elsewhere. We should regret very much to have any trouble over forcing him out, especially if Vanderbilt has failed to provide any accommodation or provisions to take care of stock, and so far as my wife is concerned she would much rather he be given every facility to move even if the delay was the means of postponing the payment a few days, and I think Mrs. Wait feels the same."

On the 20th of May following Lyons addressed a letter to Hubbard, in which he said :

"By an agreement in writing made in March last between yourself as agent for Mrs. Emma Pyatt and Mrs Mary E. Wait it was covenanted that the property was to be conveyed to me on April 1st 1892 with good title the time was extended to April 18th. No deed has been given yet. I am informed you cannot give good title to the property. I think this sale should be concluded at once according to agreement and it seems only proper for me to say now that I will have to hold you strictly to the terms of the agreement. I am damaged by every day of delay."

On the 23d of May, two days after the date of the last letter, Mrs. Wait and Mrs. Pyatt, together with their husbands, caused to be tendered to Lyons the deed for the premises, which they had executed and acknowledged before the 1st of the preceding April, which Lyons refused to accept because of the supposed defect in the title alluded to in the letter last quoted.

June 12th R. Pyatt, husband of Mrs. Pyatt, wrote the following letter to Hubbard :

"I wanted to see you to learn the condition and possibilities of Lyons taking the property. Will you kindly call upon me some time tomorrow, and if you should see Mr. Dennis kindly ask him to call with you, or some time which will suit his convenience."

July 13th Lyons addressed the following letter to Mrs. Wait:

"The delay in regard to the conveyance of the Duryea property is causing me great annoyance, trouble and damage.   It seems evident that the Borough Council is not going to do anything.   I think you ought to make your atty. begin a suit at once to clear up the title.   It should be done immediately.   I want the property title made good—this delay is breaking up all my plans and I am paying interest from April 1st last upon money which I borrowed to pay upon your property.   All this loss and damage of course I will hold you responsible for."

R. Pyatt says that he called upon Lyons in the latter part of September and asked him if he was going to take the property, and that he said to him their patience was about exhausted, to which Lyons responded that he would take the property if they could give him a good title.   Pyatt says he then said "I told him we could not give him any other deed."

October 4th R. Pyatt wrote to Hubbard as follows:

"Owing to Mr. Lyons' refusal to accept title to property No. 90 Nassau St. as tendered, and having another opportunity to dispose of the same we have done so.   The liability under the contract in case of forfeiture (that we are to pay $500) and I have sent my check for that amount to Mr. F. Dennis.   You will therefore please turn over to him the $500 deposited by Mr. Lyons with you, which we desire to return to him with his contract.   Send your bill to me for brokerage (which I believe was understood to be $212.50) and I will send you check for the same."

I am convinced, upon reading the correspondence between these parties and their statements, that the defendants—the Pyatts and the Waits—adopted and ratified in the fullest and ablest manner the action of Hubbard in entering into the agreement with Lyons.   It is true that in the outset they did not know exactly what form of agreement he had entered into, but they had every reason to believe that whatever he had done was in compliance with written instructions from Mrs. Wait, and whatever that was they adopted and made it their own ; so that if what he did which they so adopted was a lawful and binding agreement, it became theirs, and they were entitled to the benefit of it; but if not a lawful and binding agreement, then no one was bound.   They proceeded to act upon the assump-

tion that he had made a lawful and binding agreement. They directed the preparation of a deed of conveyance by Hubbard and called upon him to present it for execution. It was prepared by him, presented to them by him, executed by them and delivered by them to him with instructions to deliver the same to Lyons upon the payment by him of the purchase-money. That deed was so prepared and executed in compliance with the previous action of Hubbard in entering into the contract with Lyons and only with that. And all this correspondence has its origin and support in that contract and in nothing else. *Penrose* v. *Leeds, 1 Dick. Ch. Rep. 294–296.* As to ratification, see *Merrifield* v. *Parritt, 11 Cush. 590.* This case shows that one partner or co-tenant may become bound by consenting to or recognizing the acts of others. See, also, *Waterm. Spec. Perf.* § *244; Story Ag. 242–244, 257, 258 ; Gulick* v. *Grover, 4 Vr. 464 ; Jacobus* v. *Mutual Benefit Life Ins. Co., 12 C. E. Gr. 607 ; Bigg* v. *Strong, 3 Sm. & G. 592 ; Stuart* v. *The London and N. W. R. Co., 13 Beav. 513.*

Subsequent ratification gives agency force and effect of an original express authority. *8 Gray 609.* In this case two of three tenants in common leased the whole premises, which the third afterwards ratified. *Persons* v. *McKibben, 5 Ind. 261 ; Clealand* v. *Walker, 11 Ala. 1058.*

The agency may be implied from letters and from other facts and circumstances. *Waterm. Spec. Perf.* § *243 ; Everman* v. *Herndon (Miss.), 11 So. Rep. 652.*

It is urged they did not ratify because they did not know that an agreement had been entered into in writing. But they did know that an agreement had been entered into, and they well knew and understood the terms thereof, and acted upon such understanding. As above intimated, in whatever form that agreement was they accepted it and were bound by it to the extent that it was lawful. But their agent, who was acting for them, knew the condition of the agreement and they were bound by his knowledge. I refer to Hubbard as such agent; not, indeed, as agent to make the sale, but as agent to carry on and complete the purchase. They continued him in their employ.

They authorized him to prepare the deed and gave him directions as to its execution. Mr. Pyatt requested him to bring it to New York that he and his wife might execute it. He carried it there and they executed it and handed it to him. The above correspondence shows that they continued him in their employ until after the sale to Vanderbilt in October, as a reference to such letter above quoted will show. It cannot be doubted that the Waits and the Pyatts were chargeable with all the knowledge possessed by Hubbard, since they so continued him in their employ in and about the same business after the execution of the agreement.

This view, with respect to the attribution of the knowledge of Hubbard to the Waits and Pyatts, is still more striking, if true, with respect to the binding effect on them of the knowledge of Dennis. We will suppose it to be true, as they insist, that Dennis was not in their employ until after the 1st of April, when some question arose concerning the title to a part of the lands covered by the house on the lands referred to in the agreement. He was then requested to go to Somerville and make search as against this lot. He was paid for this. But if it be urged that this was a distinct employment, and that his relations terminated when the search was reported, it cannot be denied that he was employed by them afterwards, pending the efforts to dispose of the question of title.

Mr. Dennis was employed by Hubbard to draw the agreement. He drew the receipt for the payment of the $500, part of the consideration money. He retained possession of the agreement for the parties.

If the rule, that in equity the principal is bound by the knowledge of his agent or attorney, be of any value, I can see no way to disregard its application in this case.

R. Pyatt, in his testimony, distinctly says that he was authorized by Mrs. Pyatt and Mrs. Wait to speak and to act for them, and that under their instructions he asked Lyons, during the last week in September, to accept of a deed for the premises. It also appears that in a few days thereafter he wrote to Dennis, speaking of the contract with Lyons and sending him his check

Lyons *v.* Wait.

for $500, the liquidated damages mentioned in said contract, with directions that it should be paid to Lyons, as will more fully appear by the letter itself, above quoted.

But in addition to all these considerations, it is of great importance to remember that on the 21st day of May, Lyons wrote a letter to Hubbard, calling his attention to the contract, and that on the 23d of the same month a deed for the premises was tendered to Lyons.

But it is insisted that the defendants had a right to terminate the contract on their own motion because of the laches of Lyons. There is no authority for this, nor is there the slightest foundation for it in the facts of the case. Until Vanderbilt offered to buy, I have no doubt that the defendants were anxious to arrange and settle the question concerning the title with Lyons, and that he was anxious to have it settled. They had been making every effort to sell for several years, and he was paying interest on $6,000, and yet without any beneficial interest in the property. They wanted the consideration money and he wanted the premises as a place of business.

The matter which caused delay was the fact that two feet and eleven inches of land covered by the house are alleged to be a part of the public street or highway. It was thought that relief against this might be had by the interference of the borough council, and the testimony shows that the common council had the matter under consideration for several weeks. It is true the defendants say they did not authorize this; but it is equally true that they acquiesced in it. They made no objection until they had an opportunity to sell to Vanderbilt. They disregarded all their obligations without the slightest notice to Lyons. The authorities all show that he was entitled to reasonable notice. *Hummer* v. *Huffman, 3 C. E. Gr. 83; Waterm. Spec. Perf.* §§ *151, 419, 465, 482; Fry Spec. Perf. 317, 319; Bullock* v. *Adams's Exrs., 5 C. E. Gr. 367; Houghwout* v. *Boisaubin, 3 C. E. Gr. 315; Van Dorn* v. *Robinson, 1 C. E. Gr. 256; King* v. *Ruckman, 5 C. E. Gr. 316; Grigg* v. *Landis, 6 C. E. Gr. 494.*

Concluding that the complainant is entitled to relief, the ques-

tion therefore is, what relief should be given as the case is now presented? Counsel for Lyons insist that under the circumstances of this case the court should decree a conveyance by the defendants, with such an abatement of the price as will be equivalent to the difference in value between the twenty-two feet six inches and the twenty-six feet five inches, such difference supposed to be included in and covered by the public street or highway, as well as the building standing upon the premises, citing in support of this view, *Armor* v. *Bruner, 4 C. E. Gr. 336 ; Lancaster* v. *Roberts, 33 N. C. 27 ; 2 Story Eq. Jur. (13th ed.)* § *779 ; Woodbury* v. *Luddy, 14 Allen 1 ; Jerome* v. *Scudder, 2 Rob. (N. Y.) 169,* and other cases there cited.

In my judgment, whatever the determination of the courts in this state may be as to the rights of a vendee for compensation, when he asks for a specific performance of a contract, the principle invoked in that direction cannot apply to this case for the reason that the vendors did not agree to sell any part of the highway, although they may have believed, as I think Lyons believed, that the width of that lot was equal to the length of the house, or, in other words, that their title was just as good to that part of the land covered by the house, but which is now supposed to be in the highway, as to any other part. The instructions to Hubbard were specific. They were to sell property " at the corner of Nassau and Witherspoon streets," and not any portion of the street. It was also distinctly stated that the lot was "twenty-two and one-half feet by one hundred and twenty-nine," which carries it to the supposed line of Witherspoon street. In the agreement signed by Hubbard and Lyons, the lot is described as "all that tract and lot of land and premises situate on the corner of Nassau and Witherspoon streets, in Princeton aforesaid."

Most clearly the defendants only agreed to convey a lot of land bordering on Nassau and Witherspoon streets. I have been wholly unable to discover any method of reasoning which bound them beyond this. Lyons was undoubtedly deceived. He supposed that the width of the lot was equal to the length of the house. But there is nothing to show that the defendants

said or did anything to deceive him, except it be claimed that when one offers to sell a house and lot, the presumption is that the dimensions of the one are equal to those of the other. But in this case, the dimensions of the lot were expressly given in feet and inches to the agent, and expressly limited by the boundaries of the streets in the agreement with Lyons, and in the deed, which is claimed and held to be a ratification distinctly determined by feet and inches and the said public streets. The result is, that while it may be possible that the vendors could not enforce such a contract against a vendee who should insist that he was misled by the situation, the vendee himself, asking for a specific performance, cannot claim an abatement of the consideration.

It appeared in the progress of the cause that Mrs. Wait and Mrs. Pyatt took title to these premises from their sister, giving to her a full and valuable consideration for the same in fee simple; but the deed was without words of inheritance, so that they only took a life estate by it. It conclusively appears that the intention was to convey an estate in fee. There can be no doubt that Mrs. Wait and Mrs. Pyatt have a complete remedy in equity against their sister for the correction of this mistake, in order to perfect the title which, I think, they are obliged to convey to Lyons. If the sister should refuse to execute another conveyance in reformation of the former one and so complete the title, it is but equitable to all concerned that time should be given for Mrs. Wait and Mrs. Pyatt to institute proceedings to perfect the title in themselves.

This should be so because they are bound by their covenants to convey to Lyons a good title, and as the case stands, they ought to be permitted to relieve themselves from the liability to an action for damages as soon as their deed is delivered to him. I think they are entitled to fifteen days from and after a service upon one of them of a copy of the decree in this cause, to secure the confirmation of the title from their sister, and failing in that, thirty days thereafter to institute and carry to a decree such proceedings as will effectuate the desired result. In case they should succeed in perfecting the title as between themselves and

their sister at any time before the expiration of the said fifteen days, in the one case, or the said thirty days in the other, and they shall give notice thereof to Lyons, then it shall be the duty of Lyons to be ready to accept the deed which has been produced and offered in evidence, and to pay the purchase-money in cash at a time and place to be mentioned in the decree, the time not to exceed ten days from and after such notice.

Mr. Vanderbilt will be required to execute a deed conveying all his right, title and interest in said premises to Lyons.